[Nos. B020707, B023234, B028518, B030164. Second Dist., Div. Three. Mar. 1, 1989.]

In re the Marriage of KOOK JA and JOHN KIM.
KOOK JA KIM, Respondent, v.
JOHN KIM, Appellant.

**COUNSEL**

John Kim, in pro. per., for Appellant.

Hufstedler, Miller, Kaus & Beardsley, Patricia Phillips, Donna R. Harvey and Michael Hunter Schwartz for Respondent.

## OPINION

**CROSKEY, J.**—Appellant John Kim (Kim) has filed numerous notices of appeal and amended notices of appeal from different orders issued by the trial court which, in essence, have denied his motions (1) to modify an order re child visitation rights, (2) to set aside an order for his psychiatric evaluation, (3) to disqualify respondent's counsel, (4) to consolidate these family law proceedings with certain civil rights cases filed by him and (5) for a jury trial. These various notices of appeal are found in four separate cases (case Nos. B020707, B023234, B028518, B030164) which have been consolidated for purposes of this appeal. We find no merit in any of Kim's contentions and we therefore affirm each of the five orders made by the trial court.

### FACTUAL BACKGROUND

The child involved in this matter, G., was born in the United States in October 1977 to appellant John Kim and respondent Kook Ja Kim, both of whom are from Korea. Their marriage was dissolved in May 1979. After custody of G. was awarded to Kim, he took G. to Korea to live with his parents. Kim returned to the United States in June of 1979, followed respondent to her place of employment, and shot her three times. This rendered her paralyzed from the waist down and she has since been confined to a wheelchair. After the shooting, Kim returned to Korea and stayed there until 1980, when, using false identification, he returned to the United States with G.

On August 10, 1981, in response to a complaint from G.'s baby-sitter, Kim was arrested by the Brea Police Department for physical and sexual abuse of his daughter.[1] Once the police ascertained Kim's true identity, he was arrested for the attempted murder of respondent. He was found guilty of assault with a deadly weapon and was sentenced to state prison. After his arrest, G. was placed in a foster home where she remained until December 1983 at which time she was returned to respondent.

On March 30, 1985, appellant was released on parole on special conditions. In May 1985 respondent was awarded legal custody of G. and at that time Kim was given no visitation rights. On June 7, 1985, he violated one of his parole conditions by going to respondent's home and demanding that he be allowed to see G.

---

[1] The police report indicates that he had beaten G. with a wet towel and stick. He also had inserted his fingers into her vagina and kissed it. He explained to the police that this was necessary to clean his daughter and his actions were "part of his fatherly love."

On July 15, 1985, the court awarded custody of G. to respondent "with rights of reasonable visitation . . . to [Kim]; Alternate weekends from 10:00 a.m. Saturday to 6:00 p.m. Sunday commencing 7-26-85." On July 24th, Kim was arrested for his parole violation, taken into custody, and served an additional three months in jail. He was released in October 1985.

Since that time Kim has inundated the court system with a barrage of legal proceedings against numerous individuals, agencies and members of the state and federal judiciary (e.g., see companion case filed this date of *Kim* v. *Walker, post,* 375, at p. 379, fn. 4 [256 Cal.Rptr. 223]). Many of these lawsuits are tangentially related to the present case in that they allege a criminal conspiracy to prevent him from seeing G. He seeks here to have those cases consolidated with these proceedings.

### SUMMARY OF ORDERS FROM WHICH KIM APPEALS

This case arises from the family law action and should concern only issues of custody and visitation. Kim, however, in his numerous appeals, briefs, motions and requests, attempts to bring in many of his claims arising from his numerous civil rights actions and other lawsuits which he has filed in federal court as well as state court.[2] A summary of the orders at issue herein and the appeals to which they relate is as follows:

---

[2] In his various briefs on this appeal, Kim raises the following issues: 1. "The government should return the child to her legal custodial father if it acknowledges that the government agents abducted the child in error."

2. "The government must implement the juvenile court order which ordered to return the child to her legal custodial father upon his release from prison."

3. "The order of July 15, 1985, which changed custody from father to mother should be invalidated because the court acted without jurisdiction during pendency of appeal from juvenile court on the issue of illegal child abduction."

4. "The order of July 15, 1985 by Family Court Judge Richard Denner which divested legal custody from father must be nullified because it comes in conflict with juvenile court decision which ordered return of the child to father."

5. "Judge Richard Denner's order of July 15, 1985, should be nullified and mistrial should be declared because trial judge violated trial rules and deprived appellant of his right to due process."

6. "Judge Denner's order changing custody to a prostitute mother who abandoned child six years ago is a judicial error."

7. "The court failed to perform its duty to enforce and implement the child visitation order to the substantial prejudice of appellant."

8. "The stay away order imposed by Judge James Kolts on April 2, 1987, without provisions to implement visitation order must be dissolved because the court abrogated the valid visitation order and abridged appellant's visitation right without trial, thus without due pro-

1. *Custody of G.*—On May 13, 1985, the court awarded legal custody to respondent (B020707/B023234).

2. *Visitation by Kim*—The order of July 15, 1985, awarded to Kim the right to have reasonable unmonitored visitation on a bimonthly basis. On July 24, 1985, Kim was arrested for parole violation and served an additional three months in prison. He was released in October 1985. On November 27, 1985, the United States District Court "had an informal conference" with Kim in order to arrange visitation without violating parole conditions by using a third party to monitor the visits. On December 2, 1982, the Attorney General's office wrote Kim, setting forth guidelines on how to arrange visitation without violating his parole conditions. However, no satisfactory intermediaries were agreed upon by Kim and respondent. In June 1986, psychiatric examinations were ordered to be made of the entire

---

cess and in excess of jurisdiction and because the court abused its discretion in that the order is not supported by evidence."

9. "Appellant demands judicial inquiry into alleged judicial complicity in the criminal coverup of child rape incident and impeachment of judges implicated."

10. "This family law case should be consolidated with related civil rights actions and same special judge must be assigned to all cases under coordination proceeding."

11. "Respondent's attorney should be disqualified and sanctioned for delinquent and obstructive behavior."

12. "Psychiatric evaluation report is not part of record on appeal and should be excluded from evidence for appellate review."

13. "A review of appeal should be confined to the issues on present appeal."

14. "The dying wish of child's grandmother to visit her only grandchild must be respected for humanitarian reason which transcends any legalism."

15. "The child is a Korean National. American court lacks jurisdiction to deny visitation or to determine custody of the child under the doctrine of jus sanguis."

16. "The psychiatric evaluation is irrelevant to visitation matter which had been adjudicated after trial in 1985. It represents legal maneuver to justify criminal wrongdoing by government and the judiciary in the coverup of child rape and obstruction of custodial and visitation right of father and grandparent."

17. "Denial of child visitation to grandmother is another proof of judicial complicity in coverup of child rape incident."

18. "Denial of child visitation to grandmother is another proof of duplicity and deception in judicial performance."

19. "Attorneys Donna Harvey and Hufstedler, Miller, etc. who are government agents should be disqualified to eliminate government interference in the family law matter."

20. "The family law case should be consolidated with civil rights actions as they share common question of fact and law or, namely government conspiracy to obstruct custody and visitation to conceal evidence of child rape incident at the county foster home."

21. "Defendants in related civil actions should be joined as conspiracy alleged to these defendants are material to the family law case."

22. "Motion for jury trial is essential to eliminate judicial bias where the judiciary is accused of complicity in the criminal coverup of the child rape incident."

23. "Appointment of independent psychiatrist is important to insure unbiased opinion."

24. "Waiver of jury fees and witness fees should be granted to the indigent litigant as this case is extension of juvenile court case."

25. "Priority is demanded of this appeal for speedy trial for this is an extension of juvenile court case."

family. In October 1986, Kim's motion to have the visitation order modified to direct the marshal to pick up G. was denied. On April 3, 1987, the court issued a temporary injunction enjoining Kim from contacting respondent, respondent's older daughter, Unha Chang, and G. and from approaching within 1,000 yards of respondent, Unha, G., respondent's home and G.'s school. (B020707, B023234.)

3. *Visitation by Paternal Grandmother*—(B028518.) All contentions relating to the grandmother are now moot as the record shows that she has died.

4. *Order of Psychiatric Examination and Denial of Second Psychiatric Examination*—On June 12, 1986, the trial court ordered a psychiatric evaluation of the family. On July 28, 1987, the court denied Kim's motion for a second "independent" psychiatric examination. (B030164.)

5. *Disqualification of Respondent's Counsel*—On July 28, 1987, the court denied Kim's motion to disqualify respondent's counsel. (B030164.)

6. *Consolidation of Family Law and Civil Rights Cases*—On July 28, 1987, the court denied Kim's motion for consolidation of the family law and civil rights cases. On August 20, 1987, the court denied his motion to join the civil rights defendants in this family law case. (B030164.)

7. *Jury Trial and Waiver of Jury Fees and Witness Fees*—On August 20, 1987, the court denied his motion for a jury trial and for a waiver of jury and witness fees. (B030164.)

DISCUSSION

1. *Custody and Visitation*

■ Custody of a child is awarded according to his or her "best interests" (Civ. Code, § 4600) and trial courts have "very extensive discretion" in making this determination. (*In re Robert D.* (1984) 151 Cal.App.3d 391, 396 [198 Cal.Rptr. 801].) The conclusion arrived at by courts in such cases will not be set aside unless the record discloses a clear abuse of discretion. (*Ibid.*) ■ This court must review the record in the light most favorable to respondent (*In re Volkland* (1977) 74 Cal.App.3d 674, 678 [141 Cal.Rptr. 625]), and Kim has the burden of proving that the trial court's determination was an abuse of discretion. (*Frizzell* v. *Frizzell* (1958) 158 Cal.App.2d 652, 655 [323 P.2d 188].)

■ Here, the record amply supports the order awarding custody to respondent, and no evidence has been introduced showing that there has

been any change of circumstance. Kim brutally shot respondent and after his release from prison, violated the conditions of his parole which resulted in the additional service of time in prison. He also admitted to the police that he molested his daughter notwithstanding any excuses he might have made for such behavior. He also admitted physically abusing her. The evidence reflects the fact that he is insensitive to his child's needs and that he could be a dangerous, violent man if prevented from achieving his desires.[3] ▮▮▮▮ Clearly, the award of custody to respondent was not an abuse of the trial court's discretion.[4] As noted, *supra,* Kim has a history of resorting to violence. Both G. and her mother have been the victims of his violent and willful uncooperative nature. (See *Runsvold* v. *Runsvold* (1943) 61 Cal.App.2d 731, 733-734 [143 P.2d 746].)

On June 12, 1986, the court ordered a psychiatric evaluation of the family.[5] When the court later, on April 3, 1987, temporarily enjoined Kim's visitation rights, this evaluation was in progress. As noted in respondent's brief, respondent does not dispute Kim's right to visit with G. However, respondent insists that visitation be in a supervised setting so that G.'s safety is assured. To date, Kim's violent behavior has necessitated the denial of all visitation requests. The record shows that past efforts to arrange for monitored visitation sessions, supervised by professional social workers, have only resulted in more lawsuits being filed by Kim against respondent's counsel and the social workers involved. It is apparent that Kim's uncooperative, violent nature resulted in the court temporarily enjoining him from contacting respondent and G. Given the fact that no suitable solution had apparently been achieved by the parties and that a psychiatric evaluation of the family was in progress, the court's temporary order was proper.

---

[3] In August of 1985, Fred Walker, Kim's parole agent filed a report in which he states that Kim "presents himself as an intelligent articulate, but an extremely manipulative individual. He has continuously bombarded local courts and CDC with civil suits, appeals, and other actions in his attempts to gain service to his personal needs, under the disguise of due process and justice. However, when . . . accused of any wrong doings, he is quick to morally justify his actions or attribute them to misinterpretations."

As a result of his investigation he concluded that Kim "is a very polite, unobstrusive time bomb who has been successful in avoiding any severe extensive jail terms for the attempted murder of his wife nor the molestation of his child. It is believed that [Kim] will attempt to contact and annoy his wife and child whenever possible."

[4] Kim erroneously argues that G. is not subject to the American court's jurisdiction because she is a Korean citizen. G. was born in Los Angeles and is presently living in the Los Angeles area. The court's exercise of jurisdiction was proper.

[5] We have granted Kim's motion to exclude the psychological evaluation report attached to respondent's brief as this report is outside the scope of review on this appeal. The psychiatric evaluation was concluded after the issuance of the orders from which Kim appeals and were thus not considered by the trial court in making its determination. Letters from the evaluating psychiatrists are dated July 17, August 3, September 29, October 14, November 19, December 4, 1987, and January 6, 22, 1988.

## 2. Order of Psychiatric Examination

■ Appellant argues that the court erred in ordering a psychiatric evaluation of the family and also erred in denying his request for the appointment of a second "independent" psychiatrist not associated with the superior court. Under Evidence Code section 730, the court may, on its own motion or on motion of any party, appoint one or more experts to investigate, and to testify as an expert, as to any pertinent fact or matter. (See also Rules XXIX-XXX, Manual of Procedures for the Family Law Department (Central Dist., L. A. County); 2 Markey, Cal. Family Law Practice and Procedure (1989) § 22.107, "[t]he court has the authority to appoint a psychiatrist to examine the parents and the children in order to make a report and testify at the trial.")

In the present case, the record shows that the Kim family has had severe problems for years and a psychiatric evaluation of the family was necessary in order to resolve the custody and visitation issues before the court. There was no abuse of discretion.

Moreover, and contrary to Kim's argument, a second examination by an independent psychiatrist is not necessary. The first evaluation consisted of examinations by two psychiatrists and one psychologist. This is sufficient for the court to make a determination as to custody and visitation.

## 3. Disqualification of Respondent's Counsel

■ Kim argues that respondent's counsel, Donna Harvey, should be disqualified; however, he fails to offer any evidence supporting his argument and none appears in the record. It appears that Kim has sued everyone ever connected with this case, including every attorney who has ever represented respondent. His motion to disqualify Donna Harvey is but one more step in this ongoing crusade. Accordingly, the court's order denying his motion for disqualification was proper.

## 4. Consolidation and Joinder

■ According to Kim, the "related" civil rights cases involve allegations of government child abduction, government "cover-ups" and "judicial complicity" with respect to the alleged rape of G. while in a foster home. The family law case involves issues of custody and visitation. Since these two sets of cases fail to share a single factual or legal issue, there was no

error in the court's denial of his motion for consolidation. (See *Carpenson* v. *Najarian* (1967) 254 Cal.App.2d 856, 862 [62 Cal.Rptr. 687].) Similarly, joinder of these cases would be improper since there is no evidence suggesting that the defendants in the civil rights cases are necessary for complete relief to the parties in family law dispute. (See Code Civ. Proc., §§ 379/389.)

## 5. *Jury Trial*

█ Under Code of Civil Procedure section 592, a party is not entitled to a jury trial in a family law case as a matter of right. Section 592 specially states: ". . . in other cases [*other than for the recovery of specific, real, or personal property, with or without damages, or for money claimed as due upon contract, or as damages for breach of contract, or as damages for breach of contract, or for injuries*], issues of fact *must* be tried by the court, subject to its power to order any such issue to be tried by a jury . . . as provided in this code." (Italics added.)

Kim's allegations of "judicial bias" are completely unsupported by any evidence. Contrary to Kim's assertions, the present case did not originate when the "government abducted the child under color of law," and the alleged "government conspiracy" to cover up the child rape incident is not material to the issue of child custody and visitation. This case originated solely because of Kim's behavior and continues to survive for this same reason. There was no abuse of discretion either by the trial court in denying Kim's request for a jury trial or in denying his request for waiver of juror and witness fees.[6]

█ As discussed in the companion case, *Kim* v. *Walker, supra, post,* at page 375, Kim's appeals in these two actions are but two of many in Kim's litigious history. Clearly, the consolidated appeals in the present case are totally devoid of merit and were brought merely to continue an ongoing harassment of his ex-wife over custody of their child. Past efforts at monitored visitation sessions resulted in more lawsuits being filed by appellant. On more than one occasion Kim has threatened the judiciary generally, and this court in particular, with retaliatory litigation and, inferentially, with bodily harm. His actions are a sham, frivolous in nature, an abuse of the court system and deserving of an appropriate sanction. We have determined from an examination of postargument affidavits that the fees expended by

---

[6]Respondent, in her brief, notes that she is not opposed to the court waiving these fees for Kim.

respondent through December 29, 1988, in defending this appeal amounted to $9,276, plus costs of $606.76.

## DISPOSITION[7]

The orders are affirmed. Respondent Kook Ja Kim shall recover her costs on appeal. In addition, we assess sanctions against Kim for prosecuting this frivolous appeal in the sum of $9,882.76 which amount shall be payable to respondent as part of her costs on appeal.

Danielson, Acting P. J., and Arabian, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 17, 1989. Lucas, C. J., did not participate therein.

---

[7] While under the provisions of rule 976, California Rules of Court, this case would not ordinarily be certified for publication, we do so here. We deem it appropriate in this case (and in the companion case of *Kim v. Walker, supra, post,* at p. 375, filed this date) to publicly illuminate a particularly egregious example of an abuse of the legal system and to bring to the attention of other courts, who may find themselves similarly burdened by litigation initiated by this same party, our resolution of what appears to be only a small part of the extensive litigation which Kim has commenced and continues to prosecute.