[No. B021010. Second Dist., Div. Three. Mar. 1, 1989.]

JOHN KIM, Plaintiff and Appellant, v.
FRED WALKER et al., Defendants and Respondents.

---

COUNSEL

John Kim, in pro. per., for Plaintiff and Appellant.

Rigg & Dean, William L. Haluck, John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis and John S. Harrel, Deputy Attorneys General, for Defendants and Respondents.

---

OPINION

CROSKEY, J.—In this action the plaintiff John Kim (Kim) seeks damages for defamation which he alleges was committed by the several defendants. The alleged defamation arises out of the multiple litigation matters associated with Kim's marital and child custody dispute with his ex-wife (see opn. filed this date in *Kim v. Kim, ante,* p. 364 [256 Cal.Rptr. 217; consolidated case Nos. B020707, B023234, B028518 and B030164). Kim appeals from an order of dismissal entered by the trial court after the demurrers of the defendants Fred Walker, John Harrel and Gene Axelrod were sustained without leave to amend.[1] About two weeks later Kim filed an "amended" notice of appeal to include an appeal from the court's ruling sustaining the demurrer of another defendant, Gonzalo Pineda without leave to amend.[2] Approximately a week later the order of dismissal as to Gonzalo Pineda was filed in the court below.[3]

---

[1] Also included in the clerk's transcript on appeal is a "Second Amended Notice of Appeal" dated September 5, 1986. It appears to have been rejected by the clerk's office since it does not bear a file stamp. The nature of this amendment was to include an appeal from the court's ruling "sustaining the demurrer" of defendant Douglas Dickerson without leave to amend. The record shows an order of dismissal as to Dickerson was filed on March 31, 1986. The appeal as to Dickerson was properly rejected since it was not timely filed. (Cal. Rules of Court, rule 2(a).)

[2] The action against Pineda was originally filed in Orange County. After a demurrer was filed, appellant and counsel for Pineda agreed to a dismissal of the Orange County action so that the matter could be pursued in Los Angeles.

[3] In order to ensure that we fully dispose of this matter, Kim's appeal regarding Pineda shall be treated as filed after entry of the order of dismissal. (Cal. Rules of Court, rule 2(c).)

## FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 1985, appellant filed a complaint for damages for defamation against Walker, Pineda, Axelrod, Dickerson and Kook Ja Kim, his ex-wife.[4] The defamation arose out of an incident in which Kim was

[4]This action is one of approximately 20 lawsuits filed by Kim in propria persona. In California superior court Kim has filed the following superior court actions in either Los Angeles or Orange County: Kim v. Walker, case No. C577474; the present case on appeal, Kim v. Walker, case No. D579680; Kim v. Orange County, case No. C441519; Kim v. Evans, case No. C447665; Kim v. Gumpel, case No. C447664; Kim v. Dickerson, case No. C446726; Kim v. Dickerson, case No. C441518; Kim v. County of Orange, case No. C446201; Kim v. Miller, case No. C441520; Kim v. La Flamme, case No. C448286, Kim v. Kim, case No. D974957; Kim v. Ferranti, case No. C614006. Each of the above cases, except for the last two, were coordinated in January 1987 into one proceeding, assigned the number "2052" and entitled "Kim Family Law Cases." However, they are not "family law" cases but, instead, civil actions in which Kim seeks to recover damages based on his allegations that various attorneys, social workers, government agencies and members of the judiciary conspired to deprive him of his civil rights. Most of these cases were dismissed either pursuant to court order or because Kim refused to proceed. Summary judgment had been granted to some of the defendants in Kim v. Orange County. In Kim v. County of Orange, an appeal was pending as of August 1987. We understand that Kim has also appealed from the various dismissals and they are in varying stages of readiness. Kim v. Ferranti is a legal malpractice case. Kim v. Kim, case No. D974957, the only "family law" case, involves appeals from various child custody and visitation orders made by trial court. Those appeals have been consolidated and are the subject of an opinion which we have filed on this date (*In re Marriage of Kim, supra, ante,* at p. 364, case Nos. B020707/B023234/B028518/B030164).

In the United States District Court, Kim has filed a first amended complaint for "declaratory, injunctive relief, and damages (Civil Rights Violation, etc.)" against the United States of America; State of California; County of Orange; County of Los Angeles; City of Brea, as its local governments and political subdivision; U.S. Department of Justice, California Department of Justice; Orange County District Attorney; Anaheim Police Department; Brea Police Department; Orange County Social Services Agency; California Department of Corrections; Federal Bureau of Investigation, as its executive branch; Orange County Superior Court; Los Angeles County Superior Court; Court of Appeal of the State of California; California Supreme Court; U.S. District Court for Central District of California; U.S. Court of Appeals, for Ninth Circuit, as its judicial branch; Ronald Reagan, as President of U.S.A.; George Deukmejian, as Governor of California; Simona Gumpel, Cheryle Khale, Suzann Clark, Larry Leaman, as employees of Orange County Social Services Agency; Barbara Evans, Gene Axelrod, as deputy county counsel of Orange County; David Duncan, Harold La Flamme, as court-appointed attorneys; Ann Burnett, as L.A. County probation officer; Douglas Dickerson, as policeman of Brea police; Jimmie Kennedy, as chief of police, anaheim Police Department; Gonzalo Pineda, Ann Noriega, Donna Harvey, as government agents and individual; Cecil Hicks, as District Attorney of Orange County; Richard Bretzing, as F.B.I. Los Angeles chief agent; Floyd Clarke, as assistant director of F.B.I.; Fred Walker, as parole agent of State of California; John Van de Kamp, as California Attorney General; John Harrel, Roberta Woodrick, as deputy attorney general of State of California; Robert Bonner, as U.S. Attorney; Richard Romero, as asst. U.S. Attorney; Linda Davis, as chief criminal section civil rights division; Bradford Reynolds, as Asst. Attorney General Civil Rights Division; Edwin Meese, as Attorney General of U.S. Justice Department; James Penne, Robert Takasugi, Dickran Tevrizian, Robert Beezer, Alex Kozinski, Cynthia Hall, as federal judges; and Gilbert Mueller, James Smith, Byron McMillan, Donald McCartin, Betty Lamoreaux, John Trotter, Rose Bird, Malcolm Lucas, Everett Dickey, Thomas Johnson, John Stanton, Don Turner, Ronald George, Billy Mills, Robert O'Brien, Arleigh Woods,

arrested on charges of molestation of his minor daughter. At the time, Walker was his parole agent, Axelrod was the deputy county counsel of Orange County; Pineda was a staff attorney of Community Legal Services representing appellant's ex-wife; Dickerson was a policeman for the Brea Police Department. As a result of the efforts of some of these defendants, Kim was imprisoned for a parole violation two days before his court ordered child visitation was to commence.

On February 3, 1986, Kim amended his complaint to add John Harrel, who was the deputy attorney general assigned to represent Walker in this action, and who had appeared at a number of court hearings on behalf of Walker.[5]

### CONTENTIONS ON APPEAL

Kim contends that the trial court erred in sustaining, without leave to amend, the demurrers brought by the several defendants. He argues: "1. Absolute privilege should be denied as derogatory statement was disseminated and used outside of original judicial proceeding.

---

Lester Roth, Ronald Bauer, Judith Ryan, Stephen Lachs, Frances Rothschild, Richard Denner, Kenneth Black, James Kolts, Jack Tenner, Madeleine Flier, Vaino Spencer, Norman Epstein, Christian Markey, John Cole, Warren Deering, John Racanelli, Richard Parslow, Barbara Johnson, Robert Feinerman, Mildred Lillie, as state judges, defendants.

It appears that any person who, in the process of carrying out their official functions, attempts to prevent appellant from achieving his goal, becomes a defendant in a lawsuit, most of which have stemmed from the denial of his visitation rights due to the molestation of his daughter and the shooting of his ex-wife. His civil rights cases involve allegations of government child abduction, government "cover-ups" and "judicial complicity" with respect to an alleged rape of G. while in a foster home. He also alleges that the "governmental obstruction of child violation" is part of a "conspiracy to cover up the child rape incident . . . and to conceal such evidence" from him; that it is all part of the "criminal conspiracy." He is presently attempting to consolidate his family law case with his numerous civil rights lawsuits.

Under Code of Civil Procedure section 391, subdivision (b) "Vexatious litigant" means any person: "(1) Who, in the immediately preceding seven-year period has commenced, prosecuted or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person; or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing; or (2) Who, after a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined."

Although no hearing has yet been held in superior court to determine whether appellant is a "vexatious litigant" under the terms of the statute, as discussed, *post,* we will hold that his appeal in the present matter is totally devoid of merit and frivolous on its face.

[5] Some of these appearances are listed in appellant's "Amendment to Complaint for Damages to join John Harrel as Defendant Doe 1."

"2. Privilege should be denied because defamatory statement in parole revocation hearing and other civil proceeding was irrelevant to the subject matter.

"3. Privilege should be denied because defamatory information was disseminated with malice, without truth and relevancy.

"4. Absolute privilege should be denied because derogatory statement was used in malicious prosecution and for a conspiracy to conceal a child to cover up the child rape incident at the county foster home.

"5. Trial court erred when it ruled that plaintiff failed to comply with government claim requirement.

"6. Trial court exceeded jurisdiction in dismissing action against Fred Walker, party in default.

"7. Judicial bias and obstruction of judicial process."

### DISCUSSION

As noted, *ante,* this is one of many lawsuits filed by Kim, all of which involve various acts by individuals which Kim alleges are part of a conspiracy to deny him his "right" to visit his child. This particular action is a claim for defamation wherein Kim alleges that the defendants defamed him by "publishing accusations" that he molested his daughter, G.[6] However, from a review of the complaint, it appears that all of Kim's allegations of defamation against Harrel, Walker, Axelrod, and Pineda took place either during communications with parole agents or during judicial proceedings, or other official proceedings authorized by law.

1. *The Revocation of Kim's Parole Cannot Support an Action for Damages Against the Parole Officer.*

■ Kim sues Walker for having made certain discretionary decisions and for having taken certain action as Kim's parole officer which ultimately

---

[6]On August 10, 1981, in response to a complaint from G.'s babysitter, appellant was arrested by the Brea Police Department for physical and sexual abuse. According to the police report appellant "fondles and kisses victim's vagina; also beats victim with wet towel and stick." According to the child, Kim "puts his fingers in her 'poo-poo' and kisses her 'poo-poo.'" Kim admitted putting his fingers in her vagina while giving her a bath; however, he said it was "in order to cleanse her"; that "it is very necessary to keep a girl's vagina clean." When asked about kissing her vagina, he replied that "that's all part of his fatherly love" and "there is nothing wrong with that"; that he kisses it "as part of a game with her to make sure that it is clean." He also admitted hitting her with a towel because she would not take a bath.

In addition, Kim told the police that "if his daughter had been molested it was probably by the two boys ages 5 and 11 of the babysitter," that his daughter had told him they had "poked her in the vaginal area with their fingers." When asked why he had not reported this to anyone, he replied he did not feel it was necessary "because that was normal for little boys to do." He continually maintained he did not molest G. but only acted as a loving father.

led to the revocation of Kim's parole.[7] Under Government Code section 845.8 "Neither a public entity nor a public employee is liable for: (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release. . . ." Consequently, Walker is immune from damages for any injury resulting from the performance of his duties as a parole officer in revoking Kim's parole.

■ Walker's supervision of Kim must, of necessity, have been a close one. By the nature of his job, Walker was responsible for monitoring the circumstances of Kim's activities, and in the exercise of his discretion, for seeking to terminate Kim's parole. (See Pen. Code, § 3056; *People* v. *Denne* (1956) 141 Cal.App.2d 499, 507-511 [297 P.2d 451]; *In re Taylor* (1932) 216 Cal. 113, 115 [13 P.2d 906].) Government Code section 821.6 provides that a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Clearly Kim cannot state a cause of action against Walker for damages resulting from revocation of his parole. As his parole officer, he is absolutely immune for the supervision of appellant and revocation of his parole.

■ In addition, contrary to Kim's assertion the trial court did not exceed its jurisdiction in dismissing the action against Walker, a "party in default." The trial court held that if the clerk, through error, had entered a default against Walker, it was to be set aside nunc pro tunc.

2. *Statutory Immunity Protects Both the Parole Officer and His Attorney for Their Discretionary Acts.*

■ Walker and Harrel also cannot be liable for any injury resulting from fulfilling their duties through the exercise of discretion. Under Government Code section 820.2, absolute immunity is created for injury resulting from a public employee's exercise of discretion "whether or not such discretion be abused." All of the acts complained of were done in the exercise of Walker's discretion as Kim's parole officer or in the exercise of Harrel's discretion as a deputy attorney general employed by the state to represent Walker, another state employee. It is only in the context of Harrel's professional representation of his client that the allegedly defamatory

---

[7] It is alleged that "[t]o block the court-ordered visitation, defendants Kook Ja Kim, Gonzalo Pineda and Fred Walker conspired and imprisoned plaintiff on July 24, 1985, two days before the court-ordered child visitation was to commence, under frivolous ground of parole violation, or visiting his child without permission of parole agent, although such permission was granted by his superior and my legal right to visit my child was acknowledged by Attorney General in a previous legal action. On October 7, 1985, during the parole revocation hearing, defendant Fred Walker produced the 1981 police report, falsely accusing plaintiff of child molestation and abuse. . . ."

statements were entered. As such, no viable cause of action could be stated by appellant against either Walker or Harrel.

3. *The Defendants' Allegedly Defamatory Statements All Took Place in the Course of Their Official Duties or During Official Proceedings. They Are Therefore Absolutely Privileged.*

■ Under Civil Code section 47, "[a] privileged publication or broadcast is one made—[¶] 1. In the proper discharge of an official duty. [¶] 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law. . . ." ■ This section creates an absolute privilege which protects the Attorney General as well as all assistant and deputy attorneys general. (*Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 781 [180 Cal.Rptr. 657, 640 P.2d 793]; Gov. Code, § 1001.) This section has also been held to encompass the publication by attorneys. (*Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 824 [106 Cal.Rptr. 718].)

Kim alleges that the purportedly defamatory statements of Walker were made at a parole revocation hearing; that Harrel at all times was acting in discharge of his official duties as a deputy attorney general; that all actions by Axelrod were made as an Orange County deputy county counsel; that the "confidential records" disseminated by Axelrod consisted of juvenile court records and police reports; that Axelrod's statements were made within the course of an evaluation related to visitation rights and were directly related to a matter either pending in family court or in juvenile court; and that Pineda's allegedly defamatory action in introducing the 1981 police report took place in the course of a judicial proceeding (i.e., the family court proceedings). The complaint admits, in paragraphs 18 and 19, that all statements were made either in court proceedings relating to Harrel's client, Walker, or in attempts to supervise appellant's parole or in appellant's police record regarding allegations of child molestation. As such, all of the complained-of actions of the respective defendants are absolutely privileged under section 47 and cannot be the basis for a cause of action for defamation. All defendants are immune from suit.

■ Defendant Pineda's communications with parole agents are also absolutely privileged under section 47, subdivision 2 since the privilege includes "communication to an official administrative agency . . . designed to prompt action by that agency"; that such communications are "as much a part of the 'official proceeding' as a communication made after the proceedings had commenced." (*King* v. *Borges* (1972) 28 Cal.App.3d 27, 34 [104 Cal.Rptr. 414]; see also, *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745, 753 [181 Cal.Rptr. 423]; and *Tiedemann* v. *Superior Court* (1978) 83 Cal.App.3d 918, 925 [148 Cal.Rptr. 242].) Since all of the allegations of

which Kim complains were completely privileged and protected, the trial court did not err in sustaining defendants' demurrer without leave to amend.

■ It is to be further noted that with respect to Axelrod, Kim failed to comply with Government Code sections 910 and 911.2[8] in that more than 100 days passed between the alleged conduct of deputy county counsel Axelrod and the filing of the claim. In the complaint, Axelrod's wrongful behavior is alleged to have occurred in July 1985. Kim filed a claim with Orange County on May 22, 1985, *before* the allegedly wrongful conduct occurred, and also on November 10, 1985,[9] more than 100 days after the conducted occurred. No effort was made to be relieved of the claims filing requirement. Therefore, the superior court did not have jurisdiction to proceed any further with the action against Axelrod.

■ As noted in footnote 4, this appeal is frivolous in nature and thereby deserving of sanctions. Under Code of Civil Procedure section 907, "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." California Rules of Court, rule 26(a) provides in pertinent part, "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the *discouragement of like conduct in the future* may require." (Italics added.) Neither the Rules of Court nor the statutes provide any guidance as to the definition of a frivolous appeal. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 646 [183 Cal.Rptr. 508, 646 P.2d 179]; see also Maxwell, *The Vexatious Litigant* (1966) 54 Cal.L.Rev. 1769, 1794-1802; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 478, p. 4433.)

However, California cases discussing frivolous appeals provide a starting point for the development of a definition of frivolous. Those cases apply standards that fall into two general categories: subjective and objective. (See Cal. Civil Appellate Practice (Cont.Ed.Bar 1966) § 7.11, p. 234.) The subjective standard looks to the motives of the appellant and his or her counsel, i.e., an appeal may be deemed frivolous if the court feels that it was taken only for the purpose of delay or harassment of the other party. (Maxwell, *The Vexatious Litigant, supra,* 54 Cal.L.Rev. 1769, 1798; *In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 649.)

---

[8] At the time of the events underlying Kim's lawsuit Government Code section 911.2 stated in pertinent part: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than the 100th day after the accrual of the cause of action. . ." (This section was amended effective January 1, 1988, to expand the claim period to six months for acts occurring on or after that date.)

[9] These claims were formally denied by the board of supervisors.

The objective standard looks at the merits of the appeal from a reasonable person's perspective. "The problem involved in determining whether the appeal is or is not frivolous is not whether [appellant] acted in the honest belief he had grounds for appeal, but whether any reasonable person would agree that the point is totally and completely devoid of merit, and, therefore, frivolous." (*Estate of Walters* (1950) 99 Cal.App.2d 552, 558 [222 P.2d 100].)

The two standards are often used together, with one providing evidence of the other. Thus, "the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay. [Citations] . . . [¶] Both strands of this definition are relevant to the determination that an appeal is frivolous. An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 649-650.)

Clearly (as discussed, *ante,* in fn. 4), Kim's present appeal is totally devoid of merit. This appeal is but one episode in his litigious history of using the court system to harass and intimidate. On more than one occasion, he has threatened the judiciary generally, and this court particularly, with retaliatory litigation and, inferentially, with bodily harm. His actions, including this appeal taken from the trial court's correct assessment of the law and facts, are a sham, frivolous in nature, and deserving of an appropriate sanction.

 In determining the appropriate relief for this frivolous appeal, the underlying policy to Code of Civil Procedure section 907 should control. "The object of imposing a penalty for frivolous appeal is twofold—to discourage the same, as well as to compensate to some extent for the loss which results from delay. . . . [¶] In determining the amount of damages which should be awarded in this case for a frivolous appeal we should consider the facts with relation thereto and the effect of the delay." (*Huber* v. *Shedoudy* (1919) 180 Cal. 311, 316-317 [181 P. 63]; see also Maxwell, *The Vexatious Litigant, supra,* 54 Cal.L.Rev. 1769, 1778-1782.) We have determined from an examination of postargument briefs which we solicited the amount of the reasonable attorney's fees incurred by the defendants. Attorney's fees in defending this appeal plus costs amounted to $1,684.

## Disposition

The order of dismissal as to defendants Fred Walker, John Harrel and Gene Axelrod is affirmed, and the order of dismissal as to Gonzalo Pineda is affirmed. Said defendants shall recover their costs on appeal.

We further find that this appeal is totally devoid of merit and frivolous and assess Kim, as sanctions for prosecuting it, the sum of $1,684.[10] Said sanctions shall be payable to the defendants as part of their costs on appeal.

Danielson, Acting P. J., and Arabian, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 17, 1989. Lucas, C. J., did not participate therein.

---

[10] Finally, it appears to us that Kim is grossly abusing the legal system with his multiple actions against every government and judicial officer who fails to see things his way. While our decision here will resolve this matter it does not directly affect the other litigation matters which remain pending. With respect to those matters we respectfully invite the attention of the defendants in those actions to Code of Civil Procedure sections 391 and 391.6.

Further, we have certified this opinion for publication even though it does not technically satisfy any of the standards set out in rule 976, California Rules of Court. However, as with our decision in *In re Marriage of Kim, supra, ante,* page 364, case Nos. B020707/B023234/B028518/B030164, filed this date, we deem it appropriate here to publicly illuminate a particularly egregious example of an abuse of the legal system and to bring to the attention of other courts, who may find themselves similarly burdened by litigation initiated by this same party, our resolution of what appears to be only a small part of the extensive litigation which Kim has commenced and continues to prosecute.