[No. B035465. Second Dist., Div. Three. May 15, 1989.]

NATIONAL SECRETARIAL SERVICE, INC., Plaintiff, Cross-defendant and Respondent, v.
KENT FROEHLICH et al., Defendants, Cross-complainants and Appellants.

COUNSEL

Kent Froehlich, in pro. per., and for Defendants, Cross-complainants and Appellants.

Naomi Tsuda for Plaintiff, Cross-defendant and Respondent.

OPINION

**CROSKEY, J.**—The defendants are attorney Kent Froehlich (Froehlich) and Kent Froehlich, a professional corporation, (Corporation; hereinafter collectively defendants). They appeal from a judgment entered in an action originally filed by plaintiff National Secretarial Service, Inc. (National). National filed suit in municipal court and sought to recover approximately $6,448 as the unpaid amount due for secretarial services rendered over a five-year period. While not disputing that valuable services were performed, defendants responded with a number of technical and procedural defenses and, ultimately, a cross-complaint seeking in excess of $5 million in compensatory and punitive damages. This forced the case to the more congested and expensive venue of the superior court. Following a bench trial, the court found in favor of National on both its complaint and defendants' cross-complaint. We will affirm that judgment and, in addition, award sanctions against defendants for the prosecution of a frivolous appeal.[1]

---

[1] Which, remarkably, in view of some of the assigned claims of error, comes to us on a clerk's transcript only.

### FACTUAL AND PROCEDURAL BACKGROUND

One cannot review this record without reaching the conclusion that defendants raised every possible technical defense and asserted every possible procedural motion in order to defeat, or at least delay, the day of reckoning on a rather modest billing for what were, without any dispute, valuable secretarial services provided to defendants' law practice. We here summarize this rather unfortunate procedural history.

National first filed a complaint in the Beverly Hills Municipal Court against defendant Froehlich, an attorney, on February 15, 1983, alleging breach of contract and common counts for failure to pay for secretarial services. National alleged damages in the amount of $6,448.87.[2] On March 22, 1983, National filed both a first amended complaint expressly naming *both* defendants and an amendment to the complaint pursuant to Code of Civil Procedure section 474 adding the defendant Corporation as Doe I. Defendants demurred on March 28, 1983. However, the motion was taken off calendar and National subsequently filed a Second Amended Complaint for common counts again naming both Froehlich and Corporation and adding a cause of action for breach of an implied-in-fact contract by Froehlich. Defendants again demurred but it was overruled. Defendants filed a motion for reconsideration which was granted and the court "readopted and affirmed" its prior ruling.

Defendants then filed an answer and a verified cross-complaint for breach of contract, constructive trust, conspiracy, money had and received, fraud and conversion and requesting money damages in excess of $5 million.[3] Defendants also made a motion to transfer the case to the superior court which, as required by law, was granted.[4]

---

[2] The record reflects that National had performed such services for defendants from May 20, 1977, until approximately December 29, 1982. Commencing in May 1978, defendants began running unpaid balances with National. These balances grew until December 1982 when they reached the sum of $6,743.44. Defendants' last payment on account was in September of 1982. National stopped providing secretarial services to defendants in December of 1982.

The limited record presented to us does not provide an explanation for the differences between the final account balance ($6,743.44), the amount prayed for in National's original complaint ($6,448.87) and the amount ultimately awarded by the trial court ($6,270.44). However, in view of the minor nature of such differences we attach no significance to them.

[3] By this cross-complaint defendants sought to recover $30,000 in alleged overcharges, plus $5 million in punitive damages for the alleged conversion of defendants' money and for fraudulent misrepresentations allegedly made by National *in May of 1977* as to the quality of its work and the nature and amount of its charges.

[4] Although this motion was granted on December 5, 1984, and defendants ordered to pay the transfer fees, they did not do so until May 27, 1986, at which time the case was actually finally transferred to the superior court. The record reflects that National's original attorney had passed away on or about January 1, 1985 and its current attorney was not substituted in until about January 15, 1986. The transfer fees were only paid and the case transferred after

National filed its second at-issue memorandum on May 6, 1987, and defendants promptly filed a counter at-issue memorandum on May 14, 1987.[5] On November 13, 1987, National filed a motion to set the case for early trial.[6] Defendants opposed the motion. At the hearing on December 3, 1987, the court, on its own motion, set the case for a status conference on December 23, 1987. A mandatory settlement conference was scheduled for January 19, 1988, at which time the parties were ordered to appear for trial on January 25, 1988. Defendants then sought to continue the trial and stay all further proceedings on the asserted ground that National then had pending a bankruptcy proceeding. This motion was denied.

When the case was called for trial on January 27, 1988 defendants renewed their motions to dismiss the case and to strike the second amended complaint.[7] These motions were again denied.

At the conclusion of a three-day trial, the court granted National's motion, under Code of Civil Procedure section 631.8, for judgment on the cross-complaint, denied defendants' motion for judgment and found for National and against both defendants Froehlich and Corporation. The court found that defendants owed National $6,270.44, plus interest and costs. Counsel for National was ordered to prepare the judgment, and a proposed judgment was served by mail on defendants on February 10, 1988. Defendants filed a request for a statement of decision and counsel for defendants was ordered to prepare it by February 17, 1988. Counsel for defendants filed a response stating he was unable to do so because he did not know "the Court's factual and legal basis for its decision." The court then ordered National to prepare the statement of decision. A proposed statement of decision was served by mail on March 8, 1988. After the judgment

she made inquiry as to why the original transfer order of December 5, 1984 had not yet been carried out.

[5] National filed its first at-issue memorandum on or about September 8, 1986, and defendants filed their first counter memorandum on September 15, 1986. On or about April 2, 1987, the case was ordered to judicial arbitration, but on April 30, 1987, the court granted defendants' motion to remove the case from arbitration and to restore it to the civil active list.

[6] According to the declaration of National's counsel filed in support of this motion, the case had apparently been "lost in arbitration" and an effective order removing it from arbitration was not filed until September 9, 1987. It was apparently only through the efforts of National's counsel that this clerical error was discovered. Nonetheless, this unforeseen delay made it necessary for National to move to specially set the case for trial. That motion was vigorously opposed by defendants.

[7] Defendants' grounds for such motion were (as also originally argued in their earlier objections to National's pleading) that no cause of action was stated against Froehlich because National's contract was with the Corporation; and further, that no cause of action could be stated against the Corporation because it had not been named in the original complaint and could not thereafter be added as a Doe defendant since National at all times knew of both its existence and correct name. It was the defendants' position that the contract for services with National had been entered into with the Corporation alone. The trial court ultimately found otherwise.

and statement of decision was signed and filed by the court, defendants filed their objections thereto. The court considered defendants' objections, found them not to be well taken and issued the proposed statement of decision "as its own." In addition, the court vacated the judgment that had been prematurely signed and ordered National to prepare a new judgment for signature and filing.

Two days later defendants filed their notice of motion for new trial and motion to vacate judgment. Amended supplementary objections to the statement of decision and judgment were also filed. These were denied by the court and on May 23, 1988, a new judgment was filed. National then filed its memorandum of costs which defendants moved to strike and tax. After a hearing thereon, that motion was denied. Defendants then prosecuted this appeal.

## CONTENTIONS ON APPEAL

Defendants assert a number of contentions each of which we find to be without merit. Defendants argue that (1) the court erred (a) in overruling defendants' demurrer to National's second amended complaint for alleged failure to state a cause of action and (b) in refusing to dismiss the case on the same ground at the outset of trial; (2) the court erred in denying defendants' oral motion to continue the trial and to stay and abate the proceedings based upon the ground that National was the subject of a bankruptcy proceeding; (3) the court erred in denying the order setting the case for trial after the three-year statute of limitations had run and just before the five-year statute of limitations was about to run; (4) the judgment cannot stand against Froehlich as (a) there was no cause of action stated against him, (b) there was no evidence that he was personally liable to National, and (c) the court improperly admitted oral evidence at trial regarding the contents of certain writings; (5) defendants' were denied due process when the trial court executed National's original proposed judgment and statement of decision without giving defendants proper advance notice and, in any event, the statement of decision was improper; (6) the court erred in denying defendants' motion to strike National's memorandum of costs and to tax costs, and (7) the court erred in denying defendants' motion for a new trial.

## DISCUSSION

### 1. *Defendants' Attacks Upon National's Pleadings Were Properly Rejected*

Contrary to defendants' contention, the court did not err when it overruled the demurrer and denied the motion to strike; nor was it in error

when it refused to dismiss the case upon the grounds that the complaint did not state a cause of action against either defendant.

█ Defendants first argue that it was error to allow National to name Corporation as a party to the second amended complaint as Doe "I" because the original complaint did not contain any allegation that National was ignorant of the true name of Corporation; indeed, National had actual, if not constructive knowledge, of Corporation's name and existence at the time of the filing of the original complaint.

This argument must fail for one simple and compelling reason. Under Code of Civil Procedure section 472, a plaintiff may amend the complaint as a matter "of course" without leave of court if such amended pleading is filed before the answer or a hearing is held on a demurrer. Such amendments may add new parties to the action. (*Gross* v. *Department of Transportation* (1986) 180 Cal.App.3d 1102, 1105 [226 Cal.Rptr. 49].) That is precisely what happened here. National filed its original complaint on February 15, 1983, naming only Froehlich as a defendant. On March 22, 1983, prior to the filing of any answer or demurrer by Froehlich, National filed a first amended complaint naming both Froehlich and Corporation as defendants. Thus, the Corporation was properly added as a party at the very outset of this case and before any pleading of any kind had been filed by Froehlich.

█ The defendants next contend that (1) only Corporation, if anyone, can be held liable, because National's contract was with Corporation and not with Froehlich individually and (2) the corporate entity cannot be pierced and Froehlich cannot be the alter ego of Corporation because there was no allegation or proof that failure to disregard the corporate entity would sanction a fraud or promote injustice. Each of these arguments ignores the clear allegations of the second amended complaint, not to mention the ultimate factual determinations by the court.

Here, the second amended complaint, which is the one on which the case went to trial, is against both defendants and alleged two common counts (open book account and account stated) in addition to breach of an implied-in-fact contract by Froehlich. It also alleged that the true names and capacities of defendants sued as Does are unknown to plaintiff, except Doe I.[8] The pleading clearly stated causes of action against both defendants and was sufficient on its face. There is no showing from the record that the court erred in rejecting this argument regarding improper parties defendant.

[8] Plaintiff, on March 22, 1983, filed a standard form amendment to the original complaint pursuant to Code of Civil Procedure section 474, adding Kent Froehlich, a professional corporation, as a defendant. This was done on the same day the first amended complaint was filed listing *both* defendants by name. As it was superfluous, and added nothing to the validity of the first amended complaint's proper inclusion of the Corporation as a party defendant under Code of Civil Procedure section 472, we have disregarded such amendment.

Similarly, defendants' contention that the trial court erred in denying their motion to dismiss the case upon the grounds that the complaint did not state a cause of action against either defendant is totally without merit. As discussed, *supra,* the complaint for recovery was based on common counts against both defendants (see 4 Witkin, Cal. Procedure (3d Ed. 1985) Pleading, § 504, pp. 538-539) and an implied-in-fact contract with Froehlich individually. There was no error.

### 2. *National's Pending Bankruptcy Did Not Require That the Trial Be Continued*

■ Defendants also contend the trial court erred in denying their motion to continue the trial and to stay and abate the proceedings upon the grounds that National was the subject of a bankruptcy proceeding.[9] It is true that a bankrupt's cause of action becomes part of the bankruptcy estate upon the filing of the petition in bankruptcy. (11 U.S.C. § 541(a)(1).) However, such a transfer by operation of law does not divest the plaintiff of his right to continue to prosecute his case pending assertive action by the representative of the estate, the trustee in bankruptcy. (11 U.S.C. § 323(a); 11 U.S.C. Fed. Bankruptcy Rules, rule 6009; *ABA Recovery Services, Inc.* v. *Konold* (1988) 198 Cal.App.3d 720, 726 [244 Cal.Rptr. 27]; *Kaley* v. *Catalina Yachts* (1986) 187 Cal.App.3d 1187, 1194-1195 [232 Cal.Rptr. 384].) "Code of Civil Procedure section 385 expressly authorizes the plaintiff to remain the real party in interest even after the cause of action has been transferred to the [bankruptcy] estate by operation of law, until such time as the trustee seeks, and is allowed, to substitute in by the court." (*Kaley* v. *Catalina Yachts, supra,* 187 Cal.App.3d, at p. 1195; *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66, 78-79 [240 Cal.Rptr. 423].)

Significantly, there is no showing in the record before us as to whether bankruptcy proceedings were commenced before or after this action was commenced or if bankruptcy proceedings were even filed at all. Thus, we must presume the order of the trial court is correct since all intendments and presumptions must be indulged to support it. (*Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58]; and see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, pp. 276-277.)

### 3. *The Trial Court Did Not Abuse Its Discretion in Specially Setting the Case for Trial*

■ Defendants' contention that the trial court abused its discretion by setting the case for trial after the three-year discretionary dismissal period

---

[9]This motion was made orally at the outset of the trial and, as far as we can tell from the limited appellate record produced by the defendants, was supported by nothing more than the argument of counsel.

(Code Civ. Proc., § 583.420) had run and just before the five-year mandatory dismissal period (Code Civ. Proc., § 583.310) was about to run is totally without merit. The trial court may, in its discretion, grant a motion for special setting of a case for trial. (Code Civ. Proc., § 36, subd. (e); see, generally, *Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 345 et seq. [228 Cal.Rptr. 504, 721 P.2d 590]) Defendants argue that this late setting (about 10 weeks before the five-year period would have expired) caused them prejudice since they had no time to initiate and complete discovery. Defendants claim that since National had not seen fit to engage in discovery, they had likewise refrained.[10] Even if we were to overcome the strain on our credulity and accept such assertions as true, this would not be sufficient to establish abuse of discretion on the part of the trial court. The record reflects no circumstances demonstrating such abuse[11] or that defendants were in any way prejudiced.

### 4. *On a Clerk's Transcript Appeal the Trial Court's Findings Are Presumed to Be Correct and Supported by the Evidence*

■ Defendants contend that "the judgment is incorrect, erroneous and inconsistent with the facts and the law applicable thereto." When the record on appeal is on the clerk's transcript alone, the appellate court does not presume that the record contains "all matters material to a determination of the points on appeal," unless the error claimed appears on the face of the record. (Cal. Rules of Court, rule 52.)

"It is axiomatic in appellate review that a judgment of a lower court is presumed correct. (*County of Sacramento* v. *Lackner* (1979) 97 Cal.App.3d 576, 591 . . . .) This presumption has special significance when . . . the

---

[10] Which only serves to confirm our conviction that defendants' cross-complaint was nothing more than a defensive strategem which defendants were ready to abandon in the event National did not proceed on its complaint. It was, after all, the allegations of fraud, deceit, overcharging and incompetence contained in the defendants' cross-complaint which would have warranted more attention in discovery than the simple common count and contract claims set forth in National's complaint. That National did not see the need to pursue expensive superior court discovery to support its relatively small and simple claim for money is, under the particular facts of this case, no evidence whatever that it had abandoned that claim.

[11] Indeed, a review of the extensive opposition which defendants filed to National's motion for a special trial setting reflects but another example of defendants' behavior in this case which we find particularly troublesome. Defendants accused National of being dilatory in the prosecution of its action when in fact practically all of the delay was caused either by the acts of the defendants themselves or clerical errors by the trial court over which National had no control. It was the defendants who caused the removal of this case from the municipal court (but delayed the actual transfer for 18 months by failing to comply with the court order to pay the transfer fees) and successfully avoided a disposition by arbitration, either of which forums were obviously satisfactory to National and could have brought this case to an end years ago; it was the defendants who have repeatedly used a multiplicity of unsuccessful technical arguments to prevent this case from coming to an earlier conclusion.

appeal is based upon the clerk's transcript." (*Ehrler* v. *Ehrler* (1981) 126 Cal.App.3d 147, 154 [178 Cal.Rptr. 642].) "It is elementary and fundamental that on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings, and that the only questions presented are as to the sufficiency of the pleadings and whether the findings support the judgment. [Citations.]" (*Kompf* v. *Morrison* (1946) 73 Cal.App.2d 284, 286 [166 P.2d 350]; *Ehrler* v. *Ehrler, supra,* 126 Cal.App.3d 147, 154.)

Here, the appeal is based solely upon the clerk's transcript and the record does not provide any evidentiary basis whatever for attacking the trial court's rulings. In its statement of decision, the court found there was a written contract between National and Froehlich and Corporation under which National agreed to provide secretarial services at certain agreed piece prices. It also found that pursuant to the contract, typing services were rendered to both Froehlich and Corporation, the reasonable value of which amounted to $6,270.44; and that this written contract had been breached. In addition, the court found that *both* defendants were liable to National for the unpaid sum of $6,270.44, under both an open book account and on an account stated. The record on appeal does not contain any testimony regarding the formation, existence, interpretation, or performance of the contract between the parties, nor is there a settled statement which might support the allegations of claimed error. We therefore presume the receipt of sufficient evidence in favor of the judgment.

Defendants' argument focuses entirely on the fact that the written contract was, on its face, only between National and Corporation. However, we have nothing in the record to show us what evidence was presented to the trial court which supported its ultimate finding that Froehlich was also a party. Moreover, the issues raised by the complaint were also based on common counts and on an implied-in-fact contract with Froehlich. These issues were tried by the court and decided in favor of National. From the record before us, the judgment is amply supported by the trial court's findings described above. There was no error.

Similarly, we must reject the additional argument of defendants that the trial court erred in admitting oral evidence concerning books of accounts, ledgers, journals and statements of National on the grounds that such evidence constituted hearsay and violated the best evidence rule. The limited record before us is silent regarding all of these issues. As such, no error has been affirmatively shown and the trial court's ruling must be presumed to be correct. (*Walling* v. *Kimball, supra,* 17 Cal.2d 364, 373; and see 9 Witkin, Cal. Procedure, *supra,* Appeal, pp. 276-277.)

### 5. Defendants Were Not Prejudiced by the Trial Court's Premature Execution of the Judgment and Statement of Decision

■ Defendants contend that the trial court violated due process in signing the judgment and statement of decision on March 10, 1968, arguing that they did not have the opportunity to present objections and be heard. However, the record shows that (1) defendants filed timely objections to both the proposed judgment and proposed statement of decision and (2) the court considered their objections and on March 29th adopted the statement of decision and vacated the prematurely signed judgment, ordering National to present a new judgment for signature. Thus, any error that might have been committed by the court in signing the judgment and filing the statement of decision on March 10th was cured when the court did in fact consider defendants' objections and issued its minute order accordingly. Contrary to defendants' argument there is no rule which entitled them to a formal hearing in this instance. In any event, any error, if there was one, clearly was not prejudicial to defendants.

■ Defendants further contend that the statement of decision "blatantly on its face" fails to comply with Code of Civil Procedure section 632 and California Rules of Court, rule 232, as it was not prepared by the court but was instead prepared by National's counsel, and does not explain the factual or legal basis for its decision. Taking the second point first, the statement of decision, contrary to defendants' argument, clearly stated the factual and legal basis for the court's decision. From the record, it is apparent that the court properly concluded in its minute order of March 29, 1988, that "defendant and counsel for defendant's real objection is that the court did not believe defendant when he testified." Defendants' first objection is equally devoid of merit. There is no legal reason why the trial court cannot delegate the preparation of both the judgment and the statement of decision to counsel for one of the parties. (Cal. Rules of Court, rule 232 (a), (c) and (e); and see 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, §§ 397-398, pp. 404-405.)

### 6. There Is No Error Shown in the Denial of Defendants' Motion to Strike and Tax National's Costs

■ Contrary to defendants' contentions, the court did not err in denying their motion to strike National's memorandum of costs and to tax the same. Defendants objected to the payment of (1) $100.50 for service of process on them because it was not effected "personally" but rather was done by substituted service, and (2) $319 in fees and mileage expenses for two witness because such sum had not been paid at the time of trial and the witnesses had appeared voluntarily without subpoena. These objections are without merit.

The service and witness fees and expenses are clearly proper costs. (Code Civ. Proc., § 1033.5, subd. (a).) That service on defendants was "effected" by substituted rather than personal service is immaterial. That the witnesses may have, in this case, agreed to appear rather than require service of a subpoena does not lessen their entitlement to fees and mileage. The witnesses were present in court when the case was first called for trial and at that time came under the control of the court. The record expressly reflects that on that day, and each subsequent day, they were ordered by the trial judge to return. Under these circumstances these witnesses were "legally required to attend" within the meaning of Government Code section 68093. Nothing in defendants' brief demonstrates any abuse of discretion by the trial court in its rejection of such meritless contentions. There was no error. (See Cal. Rules of Court, rule 870.)

### 7. Defendants' Motion for a New Trial Was Properly Denied

Finally, defendants contend that the trial court erroneously denied their motion seeking a new trial and to vacate the judgment. That motion was made under Code of Civil Procedure sections 657 and 663 and asserted all available statutory grounds. Defendants argued that (1) the court's decision is against the law; (2) there was error in law occurring at the trial and excepted by the [defendants]; (3) there was insufficient evidence to justify the decision, and the damages were excessive; (4) there was irregularity in the proceedings of the court; and (5) there was an abuse of discretion by the court, which prevented defendants from having a fair trial, and defendants were surprised, which ordinary prudence could not have guarded against. This shotgun attack on the judgment was not supported by any showing made by the defendants beyond the same empty technical arguments previously discussed. As noted, *supra,* there was no irregularity in the proceedings and, from the limited record defendants have seen fit to produce on this appeal, the judgment was clearly proper. The trial court in the sound exercise of its discretion denied the motion and there is no showing of abuse.

### THE ISSUE OF SANCTIONS

National, in its brief on appeal, has requested the imposition of monetary sanctions against defendants for prosecuting a frivolous appeal.[12] Under Code of Civil Procedure section 907, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." California Rules of Court, rule 26 (a) provides in pertinent part: "Where the appeal is frivolous

---

[12] Thus, defendants had fair warning that such sanctions would be considered by the court. Indeed, defendants expressly argued the issue in their reply brief and we gave them the opportunity to submit a post argument letter brief on the amount of the sanctions claimed by National and the factual basis therefore.

or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

 As pointed out in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650 [183 Cal.Rptr. 508, 646 P.2d 179], "the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay. [Citations.] [¶] . . . An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]"

*Flaherty* cautioned "any definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) While we recognize and adhere to this restriction, it has no application in this case.

 From a review of the record before us, we can only conclude that the appeal filed in the present case is totally devoid of merit and was brought merely to harass National and to delay paying National for the secretarial services it rendered to defendants. As we have discussed, defendants have raised, both here and in the trial court, a number of technical arguments which were without any merit whatever.[13] Perhaps the best example is the unsuccessful effort of defendants to attack National's complaint on the ground that Froehlich was an improper party defendant named in the original complaint and that thereafter the Corporation was improperly added, in spite of the clear application of Code of Civil Procedure section 472 and the subsequent express finding of liability against both

---

[13] It is quite apparent to this court that defendants have used the legal system in an attempt to club a legitimate creditor into submission by forcing and extending this litigation when they in fact had no valid defenses. That defendants held a license to practice law and thus had an access to the courts that was more advantageous than that enjoyed by their small business creditor only makes defendants' conduct the more reprehensible. Defendants are fortunate that the trial court was more tolerant of defendants' conduct than we intend to be. National's attempts to obtain sanctions in the trial court under Code of Civil Procedure section 128.5 were, in our view, certainly justified.

defendants. The other technical arguments, by which the defendants sought to delay or avoid financial responsibility for the valuable secretarial services which they admittedly received, are equally unsupportable. When all of this is considered in light of the limited record which defendants have produced on appeal we can draw no other conclusion than the one which we have reached regarding defendants' real intent and motives.

It is perhaps time that the courts, both trial and appellate, begin to speak and react more forcefully with respect to cases such as this one. Such an abuse of the legal system for no other purpose than to avoid paying a legitimate claim simply can no longer be tolerated. It is not fair to the opposing litigant who is victimized by such tactics [14] and it is not fair to the greatly overworked judicial system itself and those citizens with legitimate disputes waiting patiently to use it. In those cases where such abuse is present, an award of substantial sanctions is proper.

 In determining the appropriate sanction relief, the underlying policy of Code of Civil Procedure section 907 should control. "The object of imposing a penalty for frivolous appeal is twofold—to discourage the same, as well as to compensate to some extent for the loss which results from delay. [Citation.] . . . [¶] In determining the amount of damages which should be awarded in this case for a frivolous appeal we should consider the facts with relation thereto and the effect of the delay." (*Huber* v. *Shedoudy* (1919) 180 Cal. 311, 316-317 [181 P. 63]; accord, *Kim* v. *Walker* (1989) 208 Cal.App.3d 375, 384-385 [256 Cal.Rptr. 223].)

 In recognition of the need to impose a penalty which will have the effect of discouraging similar behavior in the future and in order to provide some additional compensation to National for the long delay which defendants' improper tactics have occasioned, we have concluded that an appropriate sanction is in the sum of $3,500.[15]

In *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581], the court correctly observed that respondents are not the only parties damaged when an appellant pursues a frivolous claim or defense. Others with bona fide disputes, as well as the taxpayers, are prejudiced by the

---

[14] In this case National has yet to be paid for all of the services which it rendered during the period from May of 1977 until December 29, 1982. In addition, it has been put to the doubtlessly expensive burden of trying to cope with all of the legal gymnastics which this record reflects were imposed upon it by the defendants. The transfer to superior court itself resulted in great delay and expense as did the numerous motions filed by the defendants. We are particularly incensed by the fact that such a transfer was made based upon a claim for $5,030,000 founded on allegations which, when the case came to trial, were so lacking in evidentiary support that they could not even survive a motion to dismiss under Code of Civil Procedure section 631.8.

[15] The sum is inclusive of the attorneys fees actually incurred by National in the handling of this appeal ($1,937.50) which we find to be reasonable.

wasteful diversion of an appellate court's limited resources. *Finnie* held that appropriate sanctions could also be imposed to compensate the state for its expense in processing, reviewing and deciding a frivolous appeal. We endorse that conclusion.

In our view, the conduct of the defendants warrant the imposition of such additional sanctions here. However, defendants were not given notice that we might be considering such sanctions. We therefore will not order their imposition in this case.

## DISPOSITION

The judgment is affirmed. National shall recover its costs on appeal. As discussed, we find that this appeal is totally devoid of merit and frivolous. We therefore assess defendants, Froehlich and Corporation, as sanctions, the sum of $3,500 which shall be payable to National, in addition to its costs.

In addition, as required by Business and Professions Code section 6089, subdivision (b), a copy of this opinion shall be forwarded to the State Bar.

Danielson, Acting P. J., and Arabian, J., concurred.

On June 13, 1989, the opinion was modified to read as printed above.