Filed 5/30/23 Marriage of Foulk CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re the Marriage of GINA C. and BENJAMIN L. FOULK. | C094350 |
| GINA C. FOULK, | (Super. Ct. No. PFL20130180) |
| Respondent, | |
| v. | |
| BENJAMIN L. FOULK, | |
| Appellant. | |

Appellant Benjamin L. Foulk appeals the trial court's order awarding monetary sanctions to his former wife respondent Gina C. Foulk[1] in the amount of $68,358. Benjamin argues the trial court abused its discretion by imposing such sanctions under Code of Civil Procedure section 2023.030. We disagree and affirm.

---

[1] Because Benjamin and Gina share a last name, we will refer to the parties by their first names. No disrespect is intended.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, Benjamin and Gina were granted a dissolution of their marital status, but issues related to the division of their property remained and were subject to further proceedings. In April 2017, the trial court ordered formal discovery closed, except for requests for documents pertaining to certain unsettled subjects. Gina later moved to reopen discovery to obtain more current information necessary to appraise the parties' business, El Dorado Senior Care LLC (Senior Care). Specifically, Gina sought production of Senior Care's business records and depositions of Senior Care's administrator and Benjamin. Benjamin opposed Gina's motion to reopen discovery.

On March 18, 2019, the trial court granted Gina's motion to reopen discovery with regards to the finances and operations of Senior Care since January 1, 2017. The trial court permitted Gina to request documents pertaining to the finances and operations of Senior Care and take the depositions of Benjamin and Senior Care's administrator about Senior Care's finances.

On April 17, 2019, Gina filed a motion to compel further responses and production of documents related to Senior Care's accounting records. Gina asserted that Benjamin had failed to produce QuickBooks files for Senior Care, despite those files being in his possession.

On June 10, 2019, Gina filed another motion to compel production of checks and check registers/ledgers for Senior Care from 2017 through 2019. Gina's counsel declared that Gina requested checks and check ledgers to recreate the QuickBooks files already requested but not produced by Benjamin. Benjamin responded that he did not have checks, general accounting ledgers, or QuickBooks files for the requested years.

At a hearing on Gina's motions to compel, Benjamin argued that the QuickBooks files were created by his accountant when preparing Senior Care's tax returns. He asserted the QuickBooks files had just recently been prepared and were not in his possession when Gina initially requested them. Benjamin argued that, while the

2

accountant generated the QuickBooks files with information supplied by Benjamin, Gina's April 17, 2020 request for documents encompassed only the QuickBooks files and the ledgers produced from those files, and not the information on which the QuickBooks files and ledgers were based. Gina disputed Benjamin's characterization of Senior Care's records, pointing to a letter produced by a court appointed accountant stating that Senior Care contemporaneously prepared QuickBooks files during the course of business.

Benjamin also asserted his accountant would give QuickBooks files to the court appointed accountant to inspect, and Gina would get redacted Excel files removing confidential information pertaining to Senior Care's clients. Benjamin argued this method of production was ordered earlier in the litigation. Gina disputed Benjamin's claim the QuickBooks files were previously ordered to be produced in such a manner or that the files contained confidential information. She asserted that the parties had previously agreed to use a court appointed accountant to inspect the QuickBooks files for tampering before the files were provided to her.

The trial court granted Gina's motion to compel production of the QuickBooks files and found her other motion moot in light of that ruling. Specifically, the trial court ordered Benjamin to produce two copies of Senior Care's QuickBooks files to the court appointed accountant on or before August 12, 2019. One copy would be the unredacted version of the QuickBooks files and the other copy a version with the names of the business's clients redacted. The trial court ordered the court appointed accountant to compare the versions of the QuickBooks files to ensure only the names of clients were redacted, and then to also analyze the QuickBooks files with the audit trail function available on QuickBooks software to determine whether the files were reliably prepared.

Because of subsequent disagreements between the parties regarding the scope of the trial court's order, production of the QuickBooks files was delayed until November 27, 2019. Benjamin attempted delivery of the QuickBooks files on November 27, 2019, but was prevented from delivering the files because Gina's

3

attorney's law office was closed. Instead, he mailed the files on that date. According to Benjamin, the QuickBooks files delivered to Gina consisted of "QuickBooks journal entry files" and "Excel journal entry files."

On January 9, 2020, Gina filed a request for sanctions. As part of the request, her attorney declared that the flash drive produced by Benjamin included only Excel files and not QuickBooks files Gina could analyze for tampering. In his responsive filing, Benjamin asserted that he strictly complied with the trial court's discovery order. At a March 9, 2020 hearing on the sanctions request, Gina's accounting expert testified that the flash drive he received from Gina's attorney contained only Excel files with accounting information from Senior Care. The Excel files did not include beginning balances for any classification of expenses and deposits, and thus it was impossible to import the information from the Excel files into a workable QuickBooks report. Gina's accounting expert could not determine whether QuickBooks files had existed on the flash drive at an earlier time. The accounting expert could also not determine whether the information in the Excel files was reliable because he could not use QuickBooks's audit trail function on the Excel files.

Benjamin argued that it was too time consuming to redact all the client names from the QuickBooks reports. Thus, despite having agreed to produce redacted QuickBooks files, it was not practicable. Instead, he produced Excel files, which he believed allowed Gina to run all the QuickBooks reports she wanted, including profit/loss statements and "journal entry detail reports." The Excel files, however, prevented Gina from auditing the entries to determine whether they were reliable. Benjamin denied agreeing to produce files allowing for Gina to audit the information entered.

After reading from the transcript of the hearing held on November 15, 2019, at which Benjamin agreed to produce QuickBooks files in native format with client names redacted so that Gina could inspect and audit the files, the trial court gave Benjamin two weeks to accomplish the task he agreed to at the November 15, 2019 hearing. The trial

4

court was clear that Benjamin needed to produce QuickBooks files on which the audit trail function could be utilized. The court then put off the subject of sanctions and warned Benjamin sanctions were strongly being considered.

On March 18, 2020, the parties were back before the trial court. Benjamin asserted that it was impossible for him to comply with the trial court's order because he could not redact any portion of the QuickBooks files while still leaving the audit trail function intact. After hearing argument of the parties and considering a declaration from an attorney, the trial court determined that the names of Senior Care's clients contained in the QuickBooks files were not confidential information. The trial court vacated its prior order and ultimately ordered Benjamin on June 12, 2020, to produce unredacted and native QuickBooks files by June 26, 2020. The court then set the issue of sanctions for a July 10, 2020 hearing.

On July 10, 2020, the trial court continued the sanctions hearing because Gina's accounting expert submitted a declaration that morning asserting Benjamin had not produced the QuickBooks files in the format ordered. Benjamin agreed he had not produced the QuickBooks files on a flash drive as ordered because it was impossible for him to do so. Instead, Benjamin asserted he made Gina's accounting expert a user on Senior Care's online QuickBooks account, so he could look through the QuickBooks files unimpeded. According to Gina's accounting expert, however, his access to the online QuickBooks files was restricted and he could not download the files.

The reporter's transcript of the hearing after which sanctions were imposed on Benjamin does not appear in the record. From what can be gleaned from the clerk's transcript, the sanctions hearing occurred on September 29, 2020. In a supplemental responsive declaration to Gina's request for sanctions, the person Benjamin hired to extract the QuickBooks files in November 2019 declared that it was impossible to download QuickBooks files directly to a flash drive. Benjamin and Senior Care's administrator declared they did not know how to download QuickBooks files directly to a

5

flash drive and relied on others to maintain Senior Care's QuickBooks accounts. The accountants for Senior Care declared they had never successfully downloaded QuickBooks files to a flash drive and had always provided accounting data in an Excel file format. Senior Care's accountants believed providing Gina's accounting expert with online access to the QuickBooks files was a superior option to downloading the QuickBooks files, and thus they provided Gina's accounting expert with the ability to access Senior Care's online QuickBooks files.

The trial court found Benjamin did not produce the QuickBooks files on a flash drive and that the requirement the QuickBooks files be on a flash drive was an important component of the discovery order. Specifically, the QuickBooks files needed to be on a flash drive because "if [Gina] were to use the [online QuickBooks] files as they were provided to her, [Benjamin] w[ould] be notified every time [Gina] accesses those files. Second, [Benjamin] could cut off [Gina]'s access to [Senior Care's] records at any time for as long as he wanted. Third, [Benjamin] could make changes to his online records, but would have no ability to make such changes to a flash drive provided to [Gina]. And last, a flash drive is easier for [Gina]'s expert to use as opposed to having online access to these QuickBooks files."

The trial court found Gina's QuickBooks expert to be "very convincing." According to the trial court, Gina's QuickBooks expert testified that it was " 'quite easy' " to download QuickBooks files from the online platform to a flash drive and discussed the different ways of doing so. Further, the trial court found Gina's accounting expert to be "very convincing." Gina's accounting expert also described how to download QuickBooks files from the online platform to a flash drive.

After "[c]onsidering and comparing all of the evidence," the trial court found that it was "reasonably easy" to comply with the trial court's discovery order that Benjamin produce Senior Care's QuickBooks files on a flash drive and that Benjamin violated the discovery order by giving Gina online access to the QuickBooks files. The trial court

6

also found, "At best, if fully accepted, [Benjamin]'s evidence establishes that [Benjamin]'s attorney tried, on just one occasion, to accomplish the process necessary to provide the ordered discovery. He did this the day before the discovery was ordered to be produced. Then, approximately one month later, well after the discovery was ordered to be produced, [Senior Care's accountant] attempted to create the ordered records in the ordered form of a flash drive. [¶] This evidence pales in comparison to the quality of the evidence provided by [Gina]. Further, it shows little effort on [Benjamin]'s part to really try to honor the court's order."

On the issue of whether Benjamin acted with willful disobedience, the trial court found, "On June 12, 2020, the court ordered [Benjamin] to hand-deliver the QuickBooks files at issue to [Gina's accounting expert] on June 26, 2020, at 1:00 p.m. On June 24[th], however, [Benjamin]'s counsel filed a lawsuit on behalf of Senior Care against [Gina's accounting expert], [Gina] herself, and [Gina]'s counsel. That same day, [Benjamin]'s counsel filed an ex parte motion to overturn this court's June 12[th] discovery order. Both the lawsuit and the ex parte motion **were filed in the South Lake Tahoe branch** of this court.

"The lawsuit and the ex parte motion were both assigned to Judge Michael McLaughlin. In dismissing the ex parte motion without holding a hearing, Judge McLaughlin was very critical of [Benjamin]'s counsel's tactics and motives.

"In a scathing ex parte minute order, Judge McLaughlin noted that he was being asked to modify a discovery order issued in a completely different case that was being litigated before a completely different judge. Then Judge McLaughlin concluded that '[u]nquestionably, [Benjamin] is judge shopping, which will not be tolerated'.

"Judge McLaughlin went on to observe that '[t]he complaint appears, on its face, to have little if any merit since production of unredacted QuickBooks records was ordered by the court after much briefing and argument over several hearings.' Judge McLaughlin continued by stating that '[t]he complaint further appears to have been filed

7

as a **sham pleading** solely for the purpose of trying to subvert the discovery orders issued in the dissolution action.' ([E]mphasis added [by the trial court]).

"Finally, before concluding that he was denying the ex parte motion, Judge McLaughlin stated that '[Benjamin]'s conduct here certainly appears **to be sanctionable**; however, the court will refrain from imposing sanctions at this time and will reserve on that issue.' ([E]mphasis added [by the trial court]).

"This court completely agrees with the statements, observations, and opinions of Judge McLaughlin. The excessiveness with which [Benjamin]'s counsel acted in his effort to avoid this court's discovery order reasonably causes one to infer that he willfully would, and in fact did, practice dubious tactics to help his client avoid producing the ordered discovery." (Footnotes omitted.) Having determined Benjamin's discovery violation was willful, the trial court ordered the parties to brief the appropriate sanctions.

Following briefing from the parties, the trial court awarded Gina issue and monetary sanctions. Specifically, the trial court ordered that "[t]he value of Senior Care will be conclusively established by the uncontested testimony of [Gina]'s expert witness or witnesses. [Benjamin] will not be permitted to cross-examine said witness or witnesses. Nor will he be permitted to present any evidence and/or argument regarding the issue of the value of Senior Care." (Boldface omitted.) The trial court also ordered monetary sanctions against Benjamin in the amount of $68,358.

Benjamin appeals. In his opening brief, Benjamin challenges the trial court's imposition of monetary and evidentiary/issue sanctions. We partially dismissed Benjamin's appeal permitting him to go forward challenging only the imposition of monetary sanctions. The imposition of evidentiary/issue sanctions is only appealable from a final judgment. (*Deck v. Developers Investment Co., Inc.* (2023) 89 Cal.App.5th 808, 824-825.)

DISCUSSION

Benjamin argues the trial court erred by imposing monetary sanctions because "the facts of this case support that [Benjamin] has repeatedly and without question complied with every Court Order." As an initial matter, we note that Benjamin's argument in this regard is not that the trial court misunderstood the legal standard to be applied, but that the facts are different than what the trial court found. We are required to uphold the trial court's factual findings "if [they are] supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) It is the appellant's burden to provide an adequate record for review of the claimed errors and the " '[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609, citing *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

After a review of the appellate record submitted by Benjamin, we disagree that he complied with the trial court's discovery orders. Indeed, at every turn following the trial court's reopening of discovery, Benjamin delayed production of the requested QuickBooks files or produced incomplete or alternatives to the QuickBooks files. Further, the record reveals that Benjamin has made the argument before that he has always complied with the trial court's discovery orders. The trial court likewise rejected that argument. Based on the record provided to us and summarized *ante*, the trial court's conclusion that Benjamin did not comply with the discovery orders is supported by substantial evidence.

Benjamin also argues that his ultimate production of the QuickBooks files in the form of online access was, in essence, the discovery Gina requested. After a hearing on the issue, the trial court disagreed with that contention for the reasons stated in its order, including that online QuickBooks files could be altered, access could be suspended and monitored by Benjamin, and it was easier for Gina's accounting expert to analyze static

9

QuickBooks files. The record does not include the transcript of the hearing at which the trial court considered Benjamin's compliance with the discovery order, making it impossible for us to analyze the propriety of the trial court's ultimate findings. "The trial court's findings of fact and conclusions of law therefore are presumed to be supported by substantial evidence and are binding upon us, unless the judgment [or challenged order] is not supported by the findings or reversible error appears on the face of the record." (*Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207; see *National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521-522 ["when the record on appeal is on the clerk's transcript alone," appellate review is limited to determining whether any error "appears on the face of the record"].) We find no basis on the face of this record to undermine the trial court's factual finding that production of the QuickBooks files *on a flash drive* was an important component of the discovery order.

Benjamin further challenges the trial court's finding he acted willfully when defying the trial court's discovery order that he produce a flash drive of Senior Care's QuickBooks files. He asserts he substantially complied with all the trial court's discovery orders and his case stands in stark contrast to other cases in which willful conduct was found. Again, the record does not include the reporter's transcript from the hearing where the trial court took evidence to inform its willful determination. Also, Benjamin completely ignores the trial court's stated reasons for finding willful defiance and fails to explain why the trial court's analysis was insufficient. "It is the appellant's burden to demonstrate the existence of reversible error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

In any event, "the discovery statutes make sanctions mandatory if a party engages in conduct defined as a 'misuse of the discovery process.' ([Code of Civ. Proc.,] §§ 2023.010, 2023.030, subd. (a).) Misuse sanctions are mandatory unless the opposing party proves its actions were 'substantially justified' or the court finds ' "other circumstances would make imposition of the sanction unjust." ' (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434-1435 [133 Cal.Rptr.3d 465]; see [Code of Civ. Proc.,] § 2023.030, subd. (a).) These provisions do not require a showing of willfulness, much less bad faith." (*Shiheiber v. JPMorgan Chase Bank, N.A.* (2022) 81 Cal.App.5th 688, 703.)

The trial court imposed monetary sanctions under Code of Civil Procedure section 2023.030. Benjamin's argument that his conduct was not willful is irrelevant to the court's imposition of those monetary sanctions. Accordingly, Benjamin has not met his burden on appeal to demonstrate the trial court erred when imposing monetary sanctions.

## DISPOSITION

The trial court's order awarding monetary sanctions is affirmed. Gina is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
ROBIE, Acting P. J.

We concur:

/s/
EARL, J.

/s/
McADAM, J.[*]

_____

[*] Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12