Filed 6/11/26  La Due v. Boyadjian CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ROBIN LA DUE et al., | B344344 |
| Plaintiffs and Appellants, | Los Angeles County Super. Ct. No. 22VECV01165 |
| v. | |
| SHAHE BOYADJIAN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Wendy L. Wilcox, Judge.  Affirmed.

Robin La Due, in pro. per., for Plaintiffs and Appellants.

Phillips, Spallas & Angstadt, Michael R. Halvorsen, Howard P. Brody and Vivian Zambrano for Defendant and Respondent.

Robin and Sabine La Due[1] appeal from the trial court's grant of summary judgment in favor of their former landlord, Shahe Boyadjian. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

1.  ***The small claims and unlawful detainer cases***

The La Dues were tenants in a house Boyadjian owns in Encino. On November 29, 2021, Boyadjian filed a small claims action against Robin—Case No. 21VESC02511—for 11 months of unpaid rent (November 2020 through September 2021) totaling $45,375. On November 9, 2022, the court entered judgment for Boyadjian for $45,505—the full amount due plus interest.

In the meantime, on June 21, 2022, Boyadjian filed an unlawful detainer (UD) case against the La Dues for nonpayment of rent from April 1 to May 31, 2022, Case No. 22VEUD00858. Robin filed an answer, asserting a number of defenses, including breach of the warranty of habitability, retaliation, and arbitrary discrimination "in violation of the Constitution or the laws of the United States or California." Robin also asserted he had "made needed repairs and properly deducted the cost from the rent," and Boyadjian had violated the "Tenant Protection Act of 2019."

On July 19, 2022, Sabine filed a "Prejudgment Claim of Right to Possession" in the UD case. She declared under penalty of perjury, "I have . . . an oral or written rental agreement with a person other than the landlord." About a week later, Sabine filed an "Amended Answer" in the UD action, asserting the same defenses as had Robin. In an attachment, Sabine also alleged

---

[1]     The trial court referred to Sabine La Due as "Robin La Due's elderly mother." We refer to appellants as the La Dues or—where relevant, and to avoid confusion—by their first names.

she had "walked up the stairs from the garage to the kitchen. It is quit [*sic*] dark there and the stairs are uneven and not the same hight [*sic*] or step length. I must have tripped and fell backwards." Sabine alleged she broke her shoulder and hit her head "so I had a concussion." She stated she had gone to the emergency room four times and had to "spend some time in a [*sic*] after trauma care nursing place."

The La Dues also added allegations to their "Amended Answer" that the house had "inhabitable [*sic*] conditions," including windows that weren't sealed, resulting in "air blow[ing] through them," a "gas and power bill" that was four times what it should have been, and an inoperable "HVAC system."

On September 19, 2022, the case proceeded to a court trial. At the conclusion of the trial, the court entered a UD judgment in Boyadjian's favor and against the La Dues for past-due rent of $11,000, holdover damages of $14,000, attorney fees of $1,000, and costs of $475, for a total of $26,475. In ruling for Boyadjian, the court "stat[ed] first that the defects alleged did not rise to the level of constituting substantial noncompliance with the landlord's obligation to warrant the habitability of the premises." The court observed that Robin's " 'inability to provide specific dates . . . work[ed] against [his] credibility,' " and the court was "unable to determine whether the alleged breaches of habitability, even if substantial, took place during the rental period at issue." The court ruled the La Dues' rights under the lease were forfeited, and it awarded Boyadjian possession of the premises.

The La Dues appealed and, on August 4, 2023, the Appellate Division of the Superior Court affirmed the UD judgment. The court noted it was "difficult to decipher [the

3

La Dues'] precise contentions." The court stated the La Dues' "appellate brief, among other defects and failures to comply with the California Rules of Court, [was] almost completely bereft of citations to supporting legal authority and to the record." Nonetheless, the court continued, it would "exercise [its] discretion to consider [the La Dues'] claims on the merits, to the extent they can be discerned."

The Appellate Division noted Robin had testified that " 'cars [had] drop[ped] by, taking pictures,' " and "gaps between two of the doors and their frames" resulted in " 'draftiness.' " Robin apparently presented "photographs showing items in need of repair."[2] The court stated, "Questioned about various repairs he purportedly made to the premises, [Robin] was unable to produce any receipts to show the amounts paid or when they were incurred."

In affirming the UD judgment, the Appellate Division characterized as "undeveloped" Robin's assertion "that certain rent checks claimed by [Boyadjian] to have been rejected by the bank for nonsufficient funds appear[ed] to have been 'fraudulently' stamped as rejected." Moreover, those checks were for an earlier period, not the months (April and May 2022) at issue. The court also rejected the La Dues' arguments based on the City of Los Angeles's COVID-19-related eviction moratorium. The court stated, "[The La Dues] could have produced evidence of any number of pandemic-related circumstances in support of their affirmative defense—e.g., 'loss of income due to a COVID-19 related workplace closure,

---

[2] None of the exhibits the La Dues or Boyadjian submitted in the UD trial were in the record before the Appellate Division.

4

child care expenditures due to school closures, health-care expenses related to being ill with COVID-19 or caring for a member of the tenant's household or family who [was] ill with COVID-19, or reasonable expenditures that stem[med] from government-ordered emergency measures.'" The La Dues produced "[n]o such evidence." "Instead, [Robin] elected to attribute the unpaid rent for April and May to 'COVID-related drama in . . . [his] life,'" "offer[ing] no further detail[s] other than to assert: 'They said you don't have to prove it.'"

## 2. *The La Dues' civil lawsuit against Boyadjian*

On August 15, 2022, the La Dues filed this civil case against Boyadjian. The third amended complaint (TAC), filed on August 17, 2023, alleged eight causes of action: (1) negligence; (2) premises liability; (3) negligent hiring, supervision, or management; (4) breach of warranty/covenant of quiet enjoyment; (5) violation of Civil Code section 1942.5, subdivision (d)[3]; (6) common law retaliation; (7) intentional and negligent infliction of emotional distress; and (8) violation of the Los Angeles County eviction moratorium.[4] The La Dues

---

[3] Civil Code section 1942.5, subdivision (d) provides a landlord may not increase rent, decrease services, or evict a tenant "for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law." (Civ. Code, § 1942.5, subd. (d).)

[4] Although the title of the La Dues' eighth cause of action is "Violation of Los Angeles County Eviction Moratorium Ordinance," the body of that cause of action refers to the moratorium enacted by the City of Los Angeles, not the County.

alleged, "This case involves a number of causes of action all of which arise out of or are related to Plaintiffs living at the real property" (the Encino house).

The La Dues alleged Sabine "suffered injuries and damages from a serious trip, slip and fall accident" at the house. They alleged Sabine fell because a light was out, Boyadjian knew or should have known the condition was dangerous, and he "failed to repair" this "unsafe condition." In their fourth cause of action, the La Dues alleged Boyadjian "deprived" them of their quiet enjoyment by "serv[ing] them" with notices of inspection and notices to quit.

After more than two years of litigation, Boyadjian filed a motion on September 30, 2024 for summary judgment or, in the alternative, summary adjudication of issues, as to all eight causes of action in the TAC. Boyadjian asserted res judicata and collateral estoppel barred all of the La Dues' claims. Boyadjian filed a separate statement of undisputed facts and a request for judicial notice of documents from the UD and small claims actions. The court granted that request "for the collateral estoppel and res judicata effect."

Citing *Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal.App.4th 750 and other cases, Boyadjian contended each of the La Dues' causes of action was "barred by the doctrine of res judicata because the issues are identical to the issues which were actually litigated, necessarily decided, and decided on the merits in a former proceeding." Boyadjian stated the La Dues had asserted, as affirmative defenses in the UD case, the allegedly uninhabitable condition of the premises, the needed repairs, Sabine's slip and fall on the dark, uneven stairs, and Boyadjian's noncompliance with the COVID-related

6

tenant protections. Boyadjian noted both Robin and Sabine had appeared at the UD trial, been sworn and testified, and produced exhibits that the trial court admitted into evidence.

According to the superior court's case register, the La Dues filed an opposition to Boyadjian's motion on December 23, 2024. The La Dues did not designate that pleading for inclusion in the clerk's transcript—either in their initial designation of record or in their supplemental designation—so our appellate record does not contain it. The La Dues did not file a separate statement in response to Boyadjian's separate statement.

On December 31, 2024, Boyadjian filed a reply to the La Dues' opposition. Boyadjian noted Code of Civil Procedure section 437c, subdivision (b)(3) requires a party opposing summary judgment to file a separate statement. Boyadjian asserted the La Dues' opposition was "devoid of any admissible evidence" and their declarations did not "set forth any facts." (Boldface omitted.)

On January 7, 2025, the La Dues filed a pleading entitled, "Plaintiffs Opposition to Defendants Reply of Motion for Summary Judgment or in the Alternative for Summary Adjudication." The court accepted that pleading for filing, apparently treating it as a surreply. The surreply was largely unintelligible. The La Dues contended, "The evidence presented to the court, showed the Defendants actively defrauded the court on several occasions, by fraudulent [*sic*] altering Bank checks [and] submitting those to court in former proceedings." (Boldface omitted.) The La Dues argued, "[T]he cited judgment should be read and not unconditionally copied and presented to te [*sic*] court as valid points. . . . Raising the accusation of misleading the court would go too far. But given the time lines court have

7

to read the submitted documents, it should be carefully investigated which former judgments are presented and not a copy and paste mentality in hope the court will trust the presenting party and decide in its favor." (Boldface omitted.)

The trial court heard argument on the motion on January 10, 2025. The court sustained Boyadjian's evidentiary objections to the La Dues' declarations and granted his motion for summary judgment. As we discuss below, we don't know the basis for the court's ruling, as there is no reporter's transcript of the hearing or any other, alternative record of the oral proceedings.

### 3. *The record on appeal*

The La Dues appealed. On paragraph 2 of their Notice Designating Record on Appeal, entitled, RECORD OF ORAL PROCEEDINGS IN THE SUPERIOR COURT, filed February 14, 2025, Robin checked box 2.a. It provides, "I elect to proceed [¶] WITHOUT a record of the oral proceedings in the superior court. I understand that without a record of the oral proceedings in the superior court, the Court of Appeal will not be able to consider what was said during those proceedings in determining whether an error was made in the superior court proceedings." Robin left blank box 2.b., which addresses substitutes for a reporter's transcript, including an agreed statement or settled statement.

About six months later, on August 11, 2025, Robin filed another Notice Designating Record on Appeal form in the superior court. The word "amended" appears handwritten on the form. Robin checked box 2.b., which states, "I choose to proceed . . . [¶] b. WITH the following record of the oral proceedings in the superior court . . . [¶] (1) A reporter's transcript under rule 8.130." The form then provides, "*You must*

8

*fill out the reporter's transcript section (item 5) on pages 3 and 4 of this form*." The form then states, "I have (*check all that apply*)." Box (a) says, "Deposited with the superior court clerk the approximate cost of preparing the transcript by including the deposit with this notice as provided in rule 8.130(b)(1)." Robin left that box blank. Box (b) states, "Attached a copy of a Transcript Reimbursement Fund application filed under rule 8.130(c)(1)." That box has an "x" within it and a line through it, along with an illegible mark that could be "PC" or "PL." Box (c) states, "Attached the reporter's written waiver of a deposit under rule 8.130(b)(3)(A) for (*check either (i) or (ii)*)." Box (c) is not checked but subbox (i) under it has an "x" within it and a line drawn through it, along with an illegible mark that could be "PC" or "PL." Robin seems also to have checked box (d), which provides, "Attached a certified transcript under rule 8.130(b)(3)(C)." Some handwriting appears above that box, the only part of which is legible says, "DCA." No Transcript Reimbursement Fund application is attached to the form, nor is there an attached reporter's written waiver of a deposit or a certified transcript. In item 5, box a.(2) is checked, which states, "I request that the reporters provide . . . [¶] (2) My copy of the reporter's transcript in paper format." Box 5.b. is illegible but seems to refer to a "hearing on motion," a "status conference," and a "nonjury trial." On October 13, 2025, the clerk of this court issued a letter stating the supplemental record—consisting of three supplemental clerk's transcripts—had been filed. The letter did not refer to a reporter's transcript, as the La Dues had not complied with the requirements to obtain a reporter's transcript for this appeal.

9

**DISCUSSION**

## 1.  *Standard of review*

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.)  We view the evidence in a light favorable to the nonmoving party and resolve any evidentiary doubts or ambiguities in that party's favor.[5]  (*Saelzler*, at p. 768.)

## 2.  *Issue preclusion*

Issue preclusion—which historically has been called collateral estoppel—"prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action."  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).)  It applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  (*Id*. at p. 825.)  Courts must consider the public policies underlying the doctrine before applying it in a particular case.  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342–343.)  Those policies include "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation."  (*Id*. at p. 343.)

---

[5]     We review a trial court's exercise of its discretion in admitting or excluding evidence for an abuse of discretion.  (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447.)  The La Dues do not challenge or even discuss the trial court's rulings sustaining Boyadjian's objections to their declarations.  Accordingly, we do not address them.

### 3.  *Analysis*

Much of the La Dues' brief is unintelligible.  The brief states, "Appellant, former tenant of property owned by Respondent, agreed in the summer of 2021, to file an application to the California Rent Relief program, to receive financial assistance to cover for back rent owed by Appellant to Respondent."[6]  The brief states Boyadjian "signed the contract" but then "cashed the $73.000 [*sic*] check from the California Rent Reliefe [*sic*] program, breaching all agreements."  The brief claims "Respondent had fraudulently altered 3 checks written by Appellant to Respondent," but then notes "[t]his issue is not part of this appeal."

The brief asserts Boyadjian didn't establish that "there was a final judgment on the merits."  The brief also says the court in the UD case "used procedural difficulties as to the acceptant [*sic*] of bank statements in hard copy on paper instead denied a direct web connection to the bank of the defendant, which constitutes a procedural error which led to the judgment in favor of the plaintiff."

Our ability to assess the La Dues' claims of error is made nearly impossible by the lack of a reporter's transcript—or a permissible equivalent, such as an agreed statement or settled statement—of the hearing on Boyadjian's motion.[7]  "Where

---

[6]     It is unclear if "Appellant" means Robin alone or Robin and Sabine.

[7]     Rule 8.120(b) of the California Rules of Court provides: "If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of those oral proceedings in the form of one of the following:  (1) A reporter's

11

no reporter's transcript has been provided . . . it is presumed that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain* (1999) 75 Cal.App.4th 973 992, citing *Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 153–154.) "The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain*, at p. 992, citing *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385–386; *National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521–522.)

Because the La Dues have failed to comply with rule 8.120(b), we simply don't know what happened at the hearing, at the conclusion of which the court granted Boyadjian's motion for summary judgment. From the limited record available to us, it appears the court's ruling was correct. Both the UD action and the small claims case were finally adjudicated, and the Appellate Division affirmed the UD judgment. The issues were identical: the La Dues themselves stated in their TAC that "all" of their causes of action "arise out of or are related to Plaintiffs living at the real property commonly known as 3358 Alginet Drive, Encino, California." Those issues had been "actually litigated and necessarily decided" (*DKN Holdings*, *supra*, 61 Cal.4th at p. 825) in the UD and small claims cases. And both Robin and Sabine were parties to the UD action.

---

transcript under rule 8.130; (2) An agreed statement under rule 8.134; or (3) A settled statement under rule 8.137."

**DISPOSITION**

We affirm the judgment in Shahe Boyadjian's favor.
Boyadjian is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, Acting P. J.

We concur:

ADAMS, J.

HANASONO, J.

13